**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **MARÍA HERNÁNDEZ ROBLES,**<br><br>Plaintiff,<br><br>v.<br><br>**PRIMEFLIGHT AVIATION SERVICES, INC.,**<br><br>Defendant. | CIVIL NO. 26-1738<br><br>**RE:** Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.; Puerto Rico Act No. 44 of July 2, 1985; Puerto Rico Act No. 80 of May 30, 1976<br><br>**PLAINTIFF DEMANDS TRIAL BY JURY** |

**COMPLAINT**

**TO THE HONORABLE COURT:**

COMES NOW Plaintiff, María Hernández Robles, through the undersigned counsel, and respectfully STATES, ALLEGES, and PRAYS as follows:

## I. NATURE OF THE ACTION

1. This is an action for disability discrimination, failure to provide reasonable accommodation, and retaliation under Title I and Title V of the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008, 42 U.S.C. §§ 12101 et seq. ("ADA"), and for supplemental claims under Puerto Rico Act No. 44 of July 2, 1985, as amended, 1 L.P.R.A. §§ 501 et seq. ("Act 44"), Puerto Rico Act No. 115 of December 20, 1991, as amended, 29 L.P.R.A. §§ 194 et seq. ("Act 115"), and Puerto Rico Act No. 80 of May 30, 1976, as amended, 29 L.P.R.A. §§ 185a et seq. ("Act 80").

2. Plaintiff worked for Defendant PrimeFlight Aviation Services, Inc. ("PrimeFlight") for nearly ten years. In October 2024, she was diagnosed with breast cancer, and in February 2025 she underwent a mastectomy. When post-surgical complications required additional recovery time, her physician identified August 1, 2025, as her return-to-work date. Plaintiff submitted the medical

certificate before her approved leave expired. Rather than evaluate her request for a finite extension of leave or explore alternatives, PrimeFlight terminated her five days later, stating that she had "exhausted all available leave." Plaintiff was medically authorized to return to work with restrictions on August 1, 2025, but PrimeFlight had already terminated her employment. She subsequently pursued reemployment and submitted PrimeFlight's own medical certification authorizing modified duty, yet Defendant failed to follow up.

## II. JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. §§ 1331 and 1343(a)(4), and 42 U.S.C. § 12117(a), which incorporates the enforcement provisions of 42 U.S.C. § 2000e-5(f)(3).

4. This Court has supplemental jurisdiction over Plaintiff's claims under Puerto Rico law pursuant to 28 U.S.C. § 1367(a), because those claims arise from the same nucleus of operative facts as the federal claims and form part of the same case or controversy.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), as incorporated by 42 U.S.C. § 12117(a), because the unlawful employment practices alleged herein were committed in Puerto Rico, Plaintiff worked for Defendant in Puerto Rico, and the employment records relevant to these practices are maintained and administered, in whole or in part, in Puerto Rico.

## III. THE PARTIES

6. Plaintiff María Hernández Robles ("Plaintiff" or "Ms. Hernández") is of legal age and a resident of Carolina, Puerto Rico. At all relevant times, she was an "employee" of Defendant within the meaning of 42 U.S.C. § 12111(4), Act 44, Act 115 and Act 80.

7. Defendant PrimeFlight Aviation Services, Inc. is a corporation authorized to do business in Puerto Rico, with principal offices at 3 Sugar Creek Center Blvd., Suite 450, Sugar Land, Texas 77478. PrimeFlight provides aviation support services, including passenger terminal and wheelchair assistance services, at Luis Muñoz Marín International Airport, Carolina, Puerto Rico.

8. PrimeFlight is an "employer" within the meaning of 42 U.S.C. § 12111(5)(A), Act 44, Act 115, and Act 80. Upon information and belief, PrimeFlight employed more than 500 employees in each of twenty or more calendar weeks in the year of the challenged conduct or the preceding calendar year.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. On July 8, 2025, within 300 days of the denial of accommodation and discharge challenged in this action, Plaintiff filed a charge of disability discrimination against PrimeFlight with the U.S. Equal Employment Opportunity Commission ("EEOC"), which was dual-filed with the Anti-Discrimination Unit of the Puerto Rico Department of Labor and Human Resources. The charge was assigned EEOC Charge No. 515-2025-00433.

10. PrimeFlight was notified of the charge and submitted a position statement to the agency on August 7, 2025. Plaintiff submitted a rebuttal.

11. On October 21, 2026, the EEOC issued Plaintiff a Determination and Notice of Rights. This Complaint is filed within ninety (90) days of Plaintiff's receipt of the Notice.

12. All conditions precedent to the filing of the federal claims have been satisfied. Plaintiff alleges that the administrative charge, of which PrimeFlight received notice, tolled the applicable limitations period for her Act 44, Act 115, Act 80, and other applicable statutes.

## V. FACTUAL ALLEGATIONS

A. **Plaintiff's Employment**

13. PrimeFlight hired Ms. Hernández on June 27, 2015, at its operation at Luis Muñoz Marín International Airport.

14. Throughout her employment, Ms. Hernández performed multiple passenger-service and airport operational functions, including those of Customer Service Representative, Gate Agent (including security gate duties), Complaint Resolution Official ("CRO"), Ground Security Coordinator ("GSC"), and Wheelchair Agent. On August 23, 2022, she returned to the Wheelchair Attendant position, which she held until her termination.

15. As a Wheelchair Attendant, Ms. Hernández assisted passengers requiring mobility support, transported them to and from airport gates, helped them with their luggage, and completed related reports.

16. As a Customer Service Representative and Gate Agent, Plaintiff performed passenger-facing functions involving customer assistance, flight and boarding-related inquiries, and coordination of passenger services at the gate. Her experience extended beyond the physical demands of wheelchair assistance.

17. Plaintiff also served as a CRO and GSC, functions involving the resolution of disability-related passenger complaints and the coordination of ground security matters, respectively. These functions required judgment, communication, coordination, and knowledge of airport operational procedures.

18. Plaintiff's actual experience performing these functions demonstrated that her qualifications were not confined to transporting passengers in wheelchairs. PrimeFlight knew, or had ready access to records reflecting, her work history and the breadth of her skills.

19. For nearly ten years, Ms. Hernández performed her duties satisfactorily and met PrimeFlight's legitimate expectations.

**B. Plaintiff's Breast Cancer Diagnosis and Surgery**

20. In October 2024, Ms. Hernández was diagnosed with breast cancer.

21. Ms. Hernández promptly informed PrimeFlight of her diagnosis, including Customer Service Manager Nicole Marie Torres and her supervisor, Ms. Nachale.

22. Between October 2024 and February 2025, Ms. Hernández was absent on several occasions to undergo medical tests and evaluations related to her cancer. Each absence was supported by medical documentation provided to PrimeFlight.

23. Ms. Hernández's last day of work was on or about February 5, 2025. On February 10, 2025, she underwent a mastectomy to treat her breast cancer. Before the surgery, she provided PrimeFlight with a medical certificate stating that she would be unable to work for a defined period.

24. PrimeFlight approved a leave of absence under the Family and Medical Leave Act from February 6, 2025, through May 1, 2025.

25. PrimeFlight then granted Ms. Hernández an additional thirty (30) days of leave, from May 2, 2025, through May 31, 2025, under its Personal Medical Leave of Absence policy. In its position statement to the EEOC, PrimeFlight described that additional leave as having been granted "as an accommodation."

26. PrimeFlight thus knew that Ms. Hernández had a disability and knew that she needed leave as a reasonable accommodation of that disability.

**C. Plaintiff's Request for a Finite Extension of Leave**

27. In May 2025, Ms. Hernández suffered complications from her surgery.

28. As a result, her treating physician issued a medical certificate directing her to continue resting after surgery and identifying August 1, 2025, as her anticipated return-to-work date.

29. On May 29, 2025, before her approved leave expired, Ms. Hernández submitted the medical certificate to PrimeFlight. PrimeFlight admits that it received it on that date.

30. The medical certificate was a request for a reasonable accommodation: an extension of medical leave for a finite period of approximately two months, with a definite return date.

31. The requested extension was neither indefinite nor speculative. Plaintiff anticipated returning to work on August 1, 2025. Her experience in multiple operational functions provided additional avenues for reasonable accommodation if residual physical restrictions precluded her from resuming her regular duties without modification.

**D. <u>PrimeFlight Terminates Plaintiff Without Engaging in the Interactive Process</u>**

32. PrimeFlight never responded to the medical certificate by engaging Ms. Hernández in any dialogue about her request. No one from PrimeFlight asked her about her condition, her prognosis, or her expected return date, or discussed with her any possible accommodation or alternative.

33. PrimeFlight disregarded Plaintiff's demonstrated qualifications and prior experience in customer service, gate operations, disability-related complaint resolution, ground security coordination, and wheelchair assistance. It did not assess whether she could resume her regular duties upon medical clearance, whether reasonable modifications to her duties or schedule would permit her return, or whether reassignment to a vacant position for which she was qualified would be appropriate if she could not resume her regular position.

34. PrimeFlight did not discuss any of those alternatives with Plaintiff or advise her of any available positions for which her prior experience might qualify her. Upon information and belief, Defendant maintained passenger-service and airport operational functions of the kinds Plaintiff had previously performed. Rather than assess possible accommodations in light of her actual abilities and anticipated recovery, PrimeFlight treated the expiration of its leave allowance as dispositive of her continued employment.

35. Plaintiff did not seek indefinite leave, the elimination of essential job functions, the creation of a new position, or the displacement of another employee. She sought a defined period of recovery and the opportunity to resume employment. PrimeFlight foreclosed that opportunity without considering her individual circumstances or the range of functions she had successfully performed.

36. PrimeFlight never told Ms. Hernández that a two-month extension of her leave would impose any hardship on its operations. It never identified any operational difficulty, staffing need, or cost that prevented it from granting the extension.

37. Upon information and belief, PrimeFlight employed numerous Wheelchair Attendants at Luis Muñoz Marín International Airport, and the duties of Plaintiff's position could readily be covered by other employees during the additional period of leave, as they had been covered since February 2025.

38. On June 2, 2025, Michael Bonano of PrimeFlight called Ms. Hernández to ask whether she had received any e-mail from the company. She had not.

39. On or about June 3, 2025, Ms. Nicole Torres called Ms. Hernández and asked her to come to the office. Ms. Hernández explained that she had two medical appointments related to

her condition on the date proposed and offered to come to the office that same day. Ms. Torres agreed.

40. As Ms. Hernández was leaving for the office, Ms. Torres called her again and told her that it was not necessary to come in because she could tell her over the phone. Ms. Torres then informed Ms. Hernández that she was terminated because she had already been given enough days to recover.

41. PrimeFlight has admitted that it terminated Ms. Hernández on June 3, 2025, because she had "exhausted all available leave" and that PrimeFlight was therefore "unable to continue holding her position."

42. PrimeFlight terminated Ms. Hernández five days after receiving the medical certificate requesting a finite extension of her leave, and while she was still recovering from cancer surgery under her physician's care.

43. PrimeFlight told Ms. Hernández that she was "eligible for rehire" and could stay in contact should she become able to return to work in the future. PrimeFlight did not offer to hold her position, to reinstate her upon her return, or to reassign her to a vacant position.

44. Upon information and belief, PrimeFlight applied an inflexible policy or practice of terminating employees who are unable to return to work when their available leave is exhausted, without an individualized assessment of whether additional leave would be a reasonable accommodation.

45. Ms. Hernández had worked for PrimeFlight for nearly ten years when it terminated her employment. At the time of her termination, Ms. Torres informed the Plaintiff that, if she reapplied for employment, she would lose all of her accrued seniority and be treated as a new hire.

46. PrimeFlight acted with malice or with reckless indifference to Ms. Hernández's federally protected rights. PrimeFlight maintained written equal employment opportunity policies and knew of its obligations under the ADA, yet it terminated a long-tenured employee recovering from cancer surgery without any good-faith effort, in consultation with her, to identify and provide a reasonable accommodation.

### E. PrimeFlight's Subsequent Conduct and Failure to Consider Plaintiff's Medically Authorized Return to Employment

47. Consistent with her physician's anticipated recovery schedule, Plaintiff was medically authorized to return to work on August 1, 2025, subject to physical restrictions. By then, however, PrimeFlight had already terminated her employment on June 3, 2025. Plaintiff did not fail to return to work following her medical leave; Defendant had deprived her of the opportunity to do so.

48. As a consequence of the termination, Plaintiff sought reemployment rather than simply resuming her existing employment. PrimeFlight informed her that she would be treated as a new hire, without recognition of her nearly ten years of accrued seniority or previously accrued employment benefits.

49. Despite these substantially less favorable conditions, Ms. Hernández proceeded with the rehiring process, demonstrating her genuine willingness and desire to resume productive employment.

50. As part of the rehiring process, PrimeFlight required Ms. Hernández to undergo a medical evaluation and submit a Fitness for Duty Certification Form to be completed by her healthcare provider.

51. PrimeFlight delayed providing Plaintiff with the documentation necessary to satisfy its own medical evaluation requirements, thereby prolonging the process of her potential return to employment.

52. Notwithstanding these delays, Ms. Hernández continued to cooperate with PrimeFlight and complied with its medical documentation requirements.

53. On December 2, 2025, Plaintiff underwent a medical evaluation, following which her healthcare provider completed PrimeFlight's Fitness for Duty Certification Form, expressly releasing her to modified duty effective that date and identifying May 28, 2026, as the next evaluation date.

54. The December certification was obtained to satisfy Defendant's rehiring requirements; it was not Plaintiff's initial medical authorization to return to work. She had already been medically authorized to return on August 1, 2025, with restrictions. The December certification documented unrestricted sedentary, light, and moderate lifting of up to fifty (50) pounds, as well as pulling, pushing, carrying, reaching above shoulder level, walking, standing, stooping, kneeling, repeated bending, operating a motor vehicle, and typing, subject to the specific restrictions described below.

55. The specific physical restrictions identified by Plaintiff's healthcare provider concerned heavy lifting of fifty (50) to one hundred (100) pounds due to her prior mastectomy and pushing wheelchairs on ramps.

56. Moreover, Plaintiff's healthcare provider certified that she was fully capable of performing every cognitive and behavioral function evaluated in PrimeFlight's Fitness for Duty Certification Form, including understanding, remembering, maintaining sustained concentration, following instructions, making decisions, receiving supervision, and interacting with coworkers.

57. The medical certification did not establish that Plaintiff was unable to work. To the contrary, it expressly authorized her return to productive employment and identified specific physical restrictions that could have been evaluated by PrimeFlight in determining the reasonable accommodations necessary to facilitate her return.

58. Plaintiff submitted the completed Fitness for Duty Certification Form to PrimeFlight in compliance with Defendant's express requirements.

59. After Plaintiff submitted the completed certification, PrimeFlight did not contact her again regarding the rehiring process. It did not discuss her medical restrictions with her, seek additional information from her, communicate a determination concerning her eligibility for employment, or otherwise pursue her return to its workforce.

60. PrimeFlight was well aware that Plaintiff's qualifications and professional experience extended considerably beyond the physical demands associated with wheelchair assistance. Throughout her nearly ten years of employment, Plaintiff had performed multiple operational functions, including those of Customer Service Representative, Gate Agent, Complaint Resolution Official (CRO), Ground Security Coordinator (GSC), and Wheelchair Agent.

61. Plaintiff's demonstrated experience, coupled with the substantial physical, cognitive, and behavioral capabilities documented in PrimeFlight's own Fitness for Duty Certification Form, warranted an individualized assessment of her ability to perform the essential functions of available positions, with or without reasonable accommodation.

62. Nevertheless, PrimeFlight disregarded Plaintiff's demonstrated qualifications, prior experience, and documented functional capabilities. It failed to engage Plaintiff in any meaningful dialogue concerning her ability to perform the duties associated with her previous

positions, potential modifications to her work assignments, or available employment opportunities consistent with her medical restrictions.

63. At no time did PrimeFlight inform Plaintiff that accommodating the specific restrictions identified by her healthcare provider would impose an undue hardship upon its operations.

64. Rather than facilitate Plaintiff's return to productive employment, PrimeFlight effectively abandoned the rehiring process after Plaintiff complied with the very medical documentation requirements that Defendant itself had imposed.

65. PrimeFlight's subsequent conduct calls into question the genuineness of its representation that Plaintiff was eligible for rehire and supports the inference that its original decision to terminate her was related to her disability and need for reasonable accommodation rather than a lack of qualifications or willingness to work. Defendant had notice of Plaintiff's EEOC charge before the December medical evaluation. Plaintiff relies on these subsequent events as evidence supporting her claims arising from the denial of accommodation and discharge, and her efforts to mitigate damages.

66. Plaintiff's affirmative efforts to return to employment, even at the expense of her previously accrued seniority and employment benefits, further demonstrate her genuine willingness to work and her reasonable efforts to mitigate the economic consequences of Defendant's unlawful termination.

**F. <u>Damages</u>**

67. As a direct and proximate result of PrimeFlight's unlawful conduct, Ms. Hernández lost her employment, accrued seniority, salary, and employment benefits. Beginning August 1, 2025, when she was medically authorized to return to work with restrictions, she lost the

opportunity to earn wages that she could have earned had Defendant provided reasonable accommodation. Plaintiff also seeks any employment benefits and other losses recoverable during the preceding period.

68. As a further direct and proximate result of PrimeFlight's conduct, Ms. Hernández has suffered and continues to suffer severe emotional distress, anguish, anxiety, humiliation, and loss of enjoyment of life, aggravated by the fact that she lost her livelihood while recovering from a mastectomy.

69. Plaintiff has undertaken reasonable and affirmative efforts to mitigate her damages, including attempting to return to employment with Defendant notwithstanding the loss of her previously accrued seniority and employment benefits that such return would entail. Defendant's failure to pursue Plaintiff's return to employment after she complied with its medical documentation requirements frustrated those efforts and contributed to the continuation of her economic losses.

## VI. CAUSES OF ACTION

### COUNT I: Failure to Provide Reasonable Accommodation (ADA, 42 U.S.C. § 12112(a), (b)(5)(A))

70. Plaintiff incorporates by reference all preceding paragraphs.

71. Plaintiff is an individual with a disability within the meaning of 42 U.S.C. § 12102. Her breast cancer is a physical impairment that substantially limits major life activities, including the major bodily function of normal cell growth, and her mastectomy and post-surgical recovery substantially limited additional major life activities, including lifting, reaching, and working. See 42 U.S.C. § 12102(2)(B); 29 C.F.R. § 1630.2(j)(3)(iii). Plaintiff also has a record of such an impairment and was regarded by PrimeFlight as having such an impairment.

72. Plaintiff is a qualified individual within the meaning of 42 U.S.C. § 12111(8). She possessed the experience and skills required for her position and had performed multiple operational functions for PrimeFlight. The requested finite extension would have permitted her to return to work on August 1, 2025, when her physician medically authorized her to resume work with restrictions. Plaintiff could perform the essential functions of her position with reasonable accommodation or, if necessary, the essential functions of a suitable vacant position for which she was qualified.

73. PrimeFlight knew of Plaintiff's disability and of her need for an accommodation.

74. Plaintiff requested a reasonable accommodation by submitting her physician's certificate on May 29, 2025.

75. A finite extension of medical leave to the anticipated August 1, 2025 return date was a reasonable accommodation that was facially plausible and would not have imposed an undue hardship on PrimeFlight. Plaintiff's medical authorization to return on that date confirms that the requested extension would have served its intended purpose.

76. PrimeFlight failed to engage in a good-faith interactive process, denied the requested extension, and failed to identify or offer an effective alternative accommodation. It failed to consider Plaintiff's demonstrated qualifications, possible reasonable modifications upon her return, or reassignment to a vacant position for which she was qualified, as contemplated by 42 U.S.C. § 12111(9)(B).

77. By failing to provide a reasonable accommodation to the known physical limitations of an otherwise qualified individual with a disability, PrimeFlight violated 42 U.S.C. § 12112(b)(5)(A).

**COUNT II: <u>Discriminatory Discharge (ADA, 42 U.S.C. § 12112(a))</u>**

78. Plaintiff incorporates by reference all preceding paragraphs.

79. PrimeFlight terminated Plaintiff because of her disability and because of her need for a reasonable accommodation of that disability.

80. PrimeFlight's stated reason for termination — exhaustion of available leave — does not establish that Plaintiff could not be reasonably accommodated. Its reliance on that policy, without an individualized assessment of her finite request or her qualifications for continued employment, supports the inference that Defendant discharged Plaintiff on the basis of disability. Plaintiff's medical authorization to return on August 1, 2025, and Defendant's subsequent failure to pursue her return after receiving its own Fitness for Duty Certification further support that inference.

81. By discharging Plaintiff on the basis of disability, PrimeFlight violated 42 U.S.C. § 12112(a).

**COUNT III: <u>Retaliation (ADA, 42 U.S.C. § 12203)</u>**

82. Plaintiff incorporates by reference all preceding paragraphs.

83. Plaintiff engaged in activity protected by the ADA when she requested a reasonable accommodation on May 29, 2025.

84. Five days later, on June 3, 2025, PrimeFlight terminated her employment.

85. There is a causal connection between Plaintiff's request for accommodation and her termination, as shown by, among other things, the close temporal proximity between the request and the termination and PrimeFlight's failure to respond to the request in any manner other than by firing her.

86. PrimeFlight thereby retaliated against Plaintiff for requesting a reasonable accommodation, in violation of 42 U.S.C. § 12203(a).

**COUNT IV: <u>Disability Discrimination and Failure to Accommodate (Puerto Rico Act No. 44, 1 L.P.R.A. §§ 501 et seq.)</u>**

87. Plaintiff incorporates by reference all preceding paragraphs.

88. Act 44 prohibits private employers from discriminating against qualified persons with disabilities in any term or condition of employment, including discharge, and requires them to provide reasonable accommodation unless doing so would impose an extremely onerous burden. 1 L.P.R.A. §§ 501 et seq., including § 507a.

89. Plaintiff is a person with a disability within the meaning of Act 44 and was qualified to perform her position with reasonable accommodation. She was medically authorized to return to work with restrictions on August 1, 2025. Her experience performing multiple functions also warranted consideration of appropriate alternative accommodations.

90. PrimeFlight violated Act 44 by failing to provide Plaintiff a reasonable accommodation and by terminating her because of her disability.

91. Pursuant to 1 L.P.R.A. § 511, PrimeFlight is liable to Plaintiff for an amount equal to double the damages caused, and for reinstatement, back pay, costs, and attorney's fees.

**COUNT V: <u>Wrongful Discharge Without Just Cause (Puerto Rico Act No. 80, 29 L.P.R.A. §§ 185a et seq.)</u>**

92. Plaintiff incorporates by reference all preceding paragraphs.

93. Plaintiff was employed by PrimeFlight under a contract of employment for an indefinite term, for which she received compensation.

94. PrimeFlight discharged Plaintiff without just cause within the meaning of 29 L.P.R.A. § 185b. Her absence was due to a documented medical condition, was supported by

medical certification submitted before her leave expired, and was for a defined period. Her discharge was not motivated by any reason related to the proper and normal operation of the business.

95. Because Plaintiff was hired before January 26, 2017, she is entitled to the severance compensation (mesada) provided by Act 80 as in effect before its amendment by Act No. 4-2017, together with attorney's fees.

**COUNT VI: <u>Retaliation in Violation of Puerto Rico Act No. 115 of December 20, 1991, as Amended (29 L.P.R.A. §§ 194 et seq.)</u>**

96. Plaintiff incorporates by reference all preceding factual allegations as if fully set forth herein.

97. At all relevant times preceding her termination, Plaintiff was an employee, and Defendant was an employer, within the meaning of Puerto Rico Act No. 115 of December 20, 1991, as amended ("Act 115").

98. Act 115 prohibits employers from discharging, threatening, or otherwise discriminating against employees for providing or attempting to provide testimony, statements, or information before legislative, administrative, or judicial forums, through established internal company procedures, or to employees or representatives occupying positions of authority.

99. During her employment, Plaintiff engaged in protected activity within the meaning of Act 115 by communicating information concerning her medical condition, submitting medical documentation to Defendant's representatives occupying positions of authority, and requesting a reasonable accommodation of her disability through Defendant's established medical leave procedures.

100. Specifically, on May 29, 2025, Plaintiff provided Defendant with written medical information from her treating physician establishing the need for a finite extension of her medical leave and identifying August 1, 2025, as her anticipated return-to-work date.

101. Plaintiff's communications were made in good faith, were neither defamatory nor constituted the unlawful disclosure of privileged information, and were submitted for the legitimate purpose of preserving her employment and exercising her statutory right to reasonable accommodation.

102. Defendant had actual knowledge of Plaintiff's communications, her medical condition, and her request for reasonable accommodation.

103. Merely five (5) days after Plaintiff engaged in the aforementioned protected activity, Defendant terminated her employment, thereby depriving her of nearly ten years of accrued seniority, employment benefits, and the opportunity to resume her employment upon completion of her medically prescribed recovery period.

104. The exceedingly close temporal proximity between Plaintiff’s protected activity and her termination, together with Defendant’s failure to meaningfully consider her request, engage in an individualized assessment, or explore reasonable alternatives to termination, supports a reasonable inference of retaliatory animus.

105. Plaintiff was medically authorized to return to work on August 1, 2025, subject to certain physical restrictions. However, Defendant’s retaliatory termination deprived her of the opportunity to resume her employment.

106. Furthermore, on July 8, 2025, Plaintiff exercised her statutory right to seek administrative relief by filing a charge of discrimination against Defendant with the EEOC, which

was dual-filed with the Anti-Discrimination Unit of the Puerto Rico Department of Labor and Human Resources.

107. Defendant had actual knowledge of these administrative proceedings, having submitted its position statement to the EEOC on August 7, 2025.

108. Notwithstanding Plaintiff's subsequent efforts to return to employment and her compliance with Defendant's medical certification requirements, Defendant failed to pursue her return to employment after receiving medical documentation expressly establishing her fitness for modified duty.

109. Defendant's subsequent conduct, following its receipt of notice of Plaintiff's administrative charge, provides additional circumstantial evidence of retaliatory animus and warrants further examination of Defendant's motivations and treatment of Plaintiff.

110. Defendant's asserted justification for terminating Plaintiff, namely the exhaustion of available medical leave, was pretextual and served to conceal its retaliatory motivation in response to Plaintiff's disability-related communications and request for reasonable accommodation.

111. By terminating Plaintiff's employment in retaliation for her protected communications and conduct, Defendant violated Article 2 of Act 115, 29 L.P.R.A. § 194a.

112. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered substantial economic losses, lost wages and employment benefits, emotional distress, mental anguish, humiliation, and other compensable damages.

113. Pursuant to 29 L.P.R.A. §194a(b), Plaintiff is entitled to recover her actual damages, mental anguish damages, lost wages, employment benefits, reasonable attorney's fees,

and other applicable statutory relief, including the doubling of damages and lost wages as provided by Act 115, without duplicative recovery.

## VII. JURY DEMAND

114. Plaintiff demands a trial by jury on all claims and issues so triable, pursuant to Fed. R. Civ. P. 38 and 42 U.S.C. § 1981a(c).

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendant PrimeFlight Aviation Services, Inc., and:

a. Declare that Defendant's conduct violated the ADA and Act 44;

b. Award Plaintiff front pay;

c. Award Plaintiff back pay and lost employment benefits, with prejudgment interest, in an amount to be determined at trial;

d. Award Plaintiff compensatory damages for emotional distress, mental anguish, and other non-pecuniary losses, in an amount to be determined at trial;

e. Award Plaintiff punitive damages under 42 U.S.C. § 1981a(b)(1), in an amount to be determined at trial;

f. Award Plaintiff the statutory doubling of damages under Act 44, as applicable, without duplicative recovery;

g. Award Plaintiff the severance compensation provided by Act 80, 29 L.P.R.A. § 185a, to the extent recoverable without duplicative relief;

h. Award Plaintiff reasonable attorney's fees, expert fees, and costs under 42 U.S.C. § 12205, Act 44, 1 L.P.R.A. § 511, and Act 80;

i. Award Plaintiff all applicable statutory remedies under Act 115, including double the amount of compensable damages and lost wages pursuant to 29 L.P.R.A. § 194a(b), together with reasonable attorney's fees, without duplicative recovery.

j. Award pre- and post-judgment interest as permitted by law; and

k. Grant such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 18th day of November, 2026.

FIGUEROA
LAW & CONSULTING

**JESSICA A. FIGUEROA-ARCE, ESQ.**
300 Ave. La Sierra #135 / San Juan PR 00926
T. (787) 630-9687
Email: jessica@figueroalc.com

*s/ Jessica A. Figueroa-Arce*
Jessica A. Figueroa-Arce
USDC-PR No. 225206